**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JEFFREY HALLAS**, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **Civil Action No. 06-1481** |
| | ) |
| **MICHAEL J. ASTRUE**, | ) |
| Commissioner of Social Security, | ) |
| Defendant. | ) |

**MEMORANDUM OPINION**

**October 26, 2007**

I.       **Introduction**

Plaintiff Jeffrey Hallas ("Hallas" or "Plaintiff") brings this action pursuant to 42 U.S.C. section 405(g) and 42 U.S.C. section 1383(c)(3), seeking review of the final determination of the Commissioner of Social Security ("Commissioner"), denying his application pursuant to the Social Security Act ("SSA") for Supplementary Security Income ("SSI").[1] As is the customary practice in the Western District of Pennsylvania, the parties have submitted cross motions for summary judgment, and the record developed at the administrative proceedings.

After careful consideration of the Administrative Law Judge's ("ALJ") decision, the parties' respective briefs, and the entire record, the Court finds that substantial evidence supported the ALJ's decision that plaintiff would not be disabled but for his substance abuse. Consequently, the Court will deny plaintiff's motion for summary judgment, grant the Commissioner's motion for summary judgment, and enter judgment accordingly.

---

[1] 42 U.S.C. §§ 1381-1383f.

## II.      Procedural History

Plaintiff applied for SSI on January 13, 2004, alleging an inability to work as of February 10, 2000, due to depression and an anxiety disorder. The state agency initially denied the application, and plaintiff filed a timely written request for a hearing on May 21, 2004. An ALJ dismissed this request on April 28, 2005, after plaintiff failed to appear for a February 15, 2005, hearing. Subsequently, the Appeals Council vacated the dismissal and order and remanded the case for further proceedings, which occurred on February 21, 2006. At the hearing, plaintiff and impartial vocational expert ("VE"), Fred Monaco, Ph.D., testified.

On April 11, 2006, the ALJ ruled that plaintiff was disabled, but that a substance abuse disorder was a contributing factor material to disability determination. Therefore, the ALJ held that plaintiff was not disabled under the SSA. Moreover, the ALJ concluded that, with respect to Plaintiff's age, education, work experience, and residual functional capacity, if he abstained from substance abuse he could perform jobs in the national economy.

On September 8, 2006,  the Appeals Council denied plaintiff's request for review of the ALJ's decision, making that decision the final order of the Commissioner. Plaintiff then filed his complaint and appeal with this Court. Now, the matter is before this Court on cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## III.      Statement of the Case

Plaintiff was born in 1959 and was 46 years old when the ALJ issued his decision. Plaintiff has a high school education and has not been gainfully employed since calendar year 2000. R. 17, 26. His past relevant work consists of warehouse work, construction labor, and

2

electrician's helper.

A  review of plaintiff's documented medical history shows a lengthy history of mental impairment as well as substance abuse of cannabis, heroin, and alcohol. R. 18, 205. Plaintiff's various treating physicians and mental health experts, medically diagnosed him with an anxiety disorder and depression. R 19, 173, 191, 203, 229. However, the medical notes of those medical professionals also demonstrate that plaintiff malingered, overstated his ailments, and frequently expressed a desire to receive social security benefits. R 160, 172, 175-76, 180, 214, 226-27.

Furthermore, plaintiff and sought and received mental health therapy from October 2000 to February 2004. R. 4. Specifically, he received mental health therapy treatment at Mon Yough Community Services, a non-profit mental healthcare provider, lasting longer than one year; and a period of treatment lasting almost six months at Pyramid Healthcare[2], a treatment and general care facility for those suffering from behavioral problems and substance abuse. R. 4-5. Plaintiff also received out-patient mental health counseling at Northwestern Human Services for almost two years, commencing on June 25, 2004. R. 270

To render his decision, the ALJ weighed plaintiff's subjective complaints and testimony, the opinions of medical professionals who treated and/or evaluated plaintiff, the VE's testimony, and objective evidence in the record. Consequently, the ALJ made the following findings:

> 1. The claimant has not engaged in substantial gainful activity at any time relevant to this decision (20 C.F.R. 416.920(b) and 416.971).
>
> 2. The claimant has the following severe impairments: opiate dependence, alcohol dependence, depression and anxiety disorder (20 C.F.R. 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets

---

[2] Plaintiff's treatment at Pyramid Health Care spanned from April 27, 2004, to October 8, 2004.

or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 416.920(d)).

4. After careful consideration of the entire record, I find that, based on all of the impairments, including the substance use disorders, the claimant has the residual functional capacity to perform tasks at any exertional level consisting of simple, repetitive tasks that do not require dealing with general public, maintaining close interaction and cooperation with coworkers or independent decision-making. However, the claimant would have difficulty in maintaining regular attendance and would be likely to miss work or show up for work significantly impaired more than one day per month.

5. The claimant is unable to perform any past relevant work (20 C.F.R. 416.965).

6. The claimant was born on June 1, 1959 and was 40 years old on the alleged disability onset date, which is defined as a younger individual age 18-44 (20 C.F.R. 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 416.964).

8. Transferability of job skills is not an issue because the claimant's past relevant work is unskilled. (20 C.F.R .416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity based on all the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. 416.960(c) and 416.966).

10. If the claimant maintains abstinence from substance use, the remaining limitations will cause more than a minimal impact on the claimant's ability to perform basic work activities; therefore, the claimant would continue to have a severe impairment or combination of impairments.

11. If the claimant maintains abstinence from substance use, the claimant will not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d)).

12. If the claimant maintains abstinence from substance use, the claimant has the residual functional capacity to perform tasks at any exertional level, limited to simple, repetitive tasks that do not require dealing with the general public, maintaining close interaction and cooperation with coworkers or performing independent decision making or similar sources of a high level of work stress.

13. If the claimant maintains abstinence from the substance use, the claimant would

continue to be unable to perform past relevant work (20 C.F.R. 416.965).

14. As indicated above, transferability of job skills is not an issue because the claimant's past relevant work is unskilled. (20 C.F.R. 416.968).

15. If the claimant maintains abstinence from substance use, considering the claimant's age, education, work experience, and residual functional capacity, there are a significant number of jobs in the national economy that the claimant can perform. (20 C.F.R. 416.960(c) and 416.966).

16. Because the claimant would not be disabled if he stopped the substance use (20 C.F.R. 416.920(g)), the claimant's substance use disorder is a contributing factor material to the determination of disability (20 C.F.R. 416.935). Thus, the claimant has not been disabled within the meaning of the Social Security Act at any time through the date of this decision.

R. 17-26

## IV.     Standard of Review

Judicial review of the Commissioner's final decisions on disability claims is provided by statute. 42 U.S.C. §§ 405(g)[3] and 1383(c)(3).[4] Section 405(g) permits a district court to review transcripts and records upon which a determination of the Commissioner is based. Because the standards for eligibility under Title II (42 U.S.C. §§ 401-433, regarding Disability Insurance Benefits), and judicial review thereof, are virtually identical to the standards under Title XVI (42

---

[3] Section 405(g) provides in pertinent part:
Any individual, after any final decision of the [Commissioner] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides, or has his principal place of business. . .
42 U.S.C. § 405(g).

[4] Section 1383(c)(3) provides in pertinent part:
The final determination of the Commissioner of Social Security after a hearing under paragraph (1) shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final determinations under section 405 of this title.
42 U.S.C. § 1383(c)(3).

U.S.C. §§ 1381-1383f, regarding Supplemental Security Income, or "SSI"), regulations and decisions rendered under the Title II disability standard, 42 U.S.C. § 423, are pertinent and applicable in Title XVI decisions rendered under 42 U.S.C. § 1381(a). *Sullivan v. Zebley*, 493 U.S. 521, 525 n. 3 (1990); *Burns v. Barnhart*, 312 F.3d 113, 119 n.1 (3d Cir. 2002).

      Substantial Evidence

If supported by substantial evidence, the Commissioner's factual findings must be accepted as conclusive. *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995); *Wallace v. Secretary of HHS*, 722 F.2d 1150, 1152 (3d Cir. 1983). The district court's function is to determine whether the record, as a whole, contains substantial evidence to support the Commissioner's findings. See *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir.1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The Supreme Court has explained that "substantial evidence" means "more than a mere scintilla" of evidence, but rather, is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation omitted). See *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005); *Ventura*, 55 F.3d at 901 (quoting *Richardson*); *Stunkard v. Secretary of HHS*, 841 F.2d 57, 59 (3d Cir. 1988).

The Court of Appeals for the Third Circuit has referred to this standard as "less than a preponderance of the evidence but more than a mere scintilla." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002), *quoting Jesurum v. Secretary of the Dep't of Health and Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995). "A single piece of evidence will not satisfy the substantiality test if the Secretary ignores, or fails to resolve, a conflict created by countervailing evidence." *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993), *quoting Kent v. Schweiker*, 710 F.2d 110, 114 (3d

6

Cir. 1983).  The substantial evidence standard allows a court to review a decision of an ALJ, yet avoid interference with the administrative responsibilities of the Commissioner.  *See Stewart v. Secretary of HEW*, 714 F.2d 287, 290 (3d Cir.1983).

In reviewing the record for substantial evidence, the district court does not weigh the evidence or substitute its own conclusions for those of the fact finder.  *Rutheford*, 399 F.3d at 552.  In making this determination, the district court considers and reviews only those findings upon which the ALJ based his or her decision, and cannot rectify errors, omissions or gaps in the medical record by supplying additional findings from its own independent analysis of portions of the record which were not mentioned or discussed by the ALJ. *Fargnoli v. Massarini*, 247 F.3d 34, 44 n.7 (3d Cir. 2001) ("The District Court, apparently recognizing the ALJ's failure to consider all of the relevant and probative evidence, attempted to rectify this error by relying on medical records found in its own independent analysis, and which were not mentioned by the ALJ. This runs counter to the teaching of *SEC v. Chenery Corp*., 318 U.S. 80 (1943), that '[t]he grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based.' Id. at 87"; parallel and other citations omitted).

### Five Step Determination Process

To qualify for DIB under Title II of the Act, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period."  *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987);  42 U.S.C. § 423 (d)(1) (1982). Similarly, to qualify for SSI, the claimant must show "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death

or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. § 1383c(a)(3)(A).

When resolving the issue of whether a claimant is disabled and whether the claimant is

entitled to either DIB or SSI benefits, the Commissioner utilizes the familiar five-step sequential

evaluation. 20 C.F.R. §§ 404.1520 and 416.920 (1995). *See Sullivan*, 493 U.S. at 525.  The

Court of Appeals for the Third Circuit summarized this five step process in *Plummer v. Apfel*,

186 F.3d 422 (3d Cir.1999):

> In step one, the Commissioner must determine whether the claimant is currently
> engaging in substantial gainful activity. 20 C .F.R. § 404.1520(a). If a claimant is found
> to be engaged in substantial activity, the disability claim will be denied. . . . In step two,
> the Commissioner must determine whether the claimant is suffering from a severe
> impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that her impairments
> are "severe", she is ineligible for disability benefits.
>
> In step three, the Commissioner compares the medical evidence of the claimant's
> impairment to a list of impairments presumed severe enough to preclude any gainful
> work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or
> its equivalent, the analysis proceeds to steps four and five. Step four requires the ALJ to
> consider whether the claimant retains the residual functional capacity to perform her past
> relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating
> an inability to return to her past relevant work. . . .
>
> If the claimant is unable to resume her former occupation, the evaluation moves to
> the final step [five]. At this stage, the burden of production shifts to the Commissioner,
> who must demonstrate the claimant is capable of performing other available work in
> order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are
> other jobs existing in significant numbers in the national economy which the claimant can
> perform, consistent with her medical impairments, age, education, past work experience,
> and residual functional capacity. The ALJ must analyze the cumulative effect of all the
> claimant's impairments in determining whether she is capable of performing work and is
> not disabled. The ALJ will often seek the assistance of a vocational expert at this fifth
> step. . . .

*Plummer*, 186 F.3d at 428 (italics supplied; certain citations omitted). *See also Rutherford*, 399

F.3d at 551 ("In the first four steps the burden is on the claimant to show that she (1) is not

currently engaged in gainful employment because she (2) is suffering from a severe impairment (3) that is listed in an appendix (or is equivalent to such a listed condition) or (4) that leaves her lacking the RFC to return to her previous employment (Reg. §§ 920(a) to (e)). If the claimant satisfies step 3, she is considered per se disabled. If the claimant instead satisfies step 4, the burden then shifts to the Commissioner at step 5 to show that other jobs exist in significant numbers in the national economy that the claimant could perform (Reg. § 920(f)).").

Thus, a claimant may demonstrate that his or her impairment is of sufficient severity to qualify for benefits in one of two ways:

(1)  by introducing medical evidence that the claimant is disabled per se because he or she meets the criteria for one or more of a number of serious Listed Impairments delineated in 20 C.F.R. Regulations No. 4, Subpt. P, Appendix 1, or that the impairment is equivalent to a Listed Impairment. *See Heckler v. Campbell*, 461 U.S. 458, 460 (1983); *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777 (Steps 1-3); or,

(2) in the event that claimant suffers from a less severe impairment, he or she will be deemed disabled where he or she is nevertheless unable to engage in "any other kind of substantial gainful work which exists in the national economy . . . ." *Campbell*, 461 U.S. at 461 (*citing* 42 U.S.C. § 423 (d)(2)(A)). In order to prove disability under this second method, plaintiff must first demonstrate the existence of a medically determinable disability that precludes him or her from returning to his or her former job (Steps 1-2, 4). *Stunkard*, 841 F.2d at 59; *Kangas*, 823 F.2d at 777.  Once it is shown that he or she is unable to resume his or her previous employment, the burden shifts to the Commissioner (Step 5) to prove that, given plaintiff's mental or physical limitations, age, education and work experience, he or she is able to perform

substantial gainful activity in jobs available in the national economy. *Campbell*, 461 U.S. at 461; *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003); *Stunkard*, 842 F.2d at 59; *Kangas*, 823 F.2d at 777.

<u>Vocational Expert - Hypothetical Questions</u>

The determination of whether a claimant retains the RFC to perform jobs existing in the workforce at step 5 is frequently based in large measure on testimony provided by the vocational expert. *Rutherford*, 399 F.3d at 553, *citing Podedworny v. Harris*, 745 F.2d 210, 218 (3d Cir. 1984) (citations omitted). Where a hypothetical question to the VE accurately sets forth all of a claimant's significant impairments and restrictions in activities, physical and mental, as found by the ALJ or as uncontradicted on the medical record, the expert's response as to the existence of jobs in the national economy which the claimant is capable of performing may be considered substantial evidence in support of the ALJ's findings on claimant's RFC. *See, e.g., Burns v. Barnhart,* 312 F.3d 113, 123 (3d Cir. 2002), *citing Podedworny*, 745 F.2d at 218 and *Chrupcala v. Heckler*, 829 F.2d, 1276 (3d Cir. 1987) (leading cases on the use of hypothetical questions to VEs).[5] *See also Plummer*, 186 F.3d at 428 (factors to be considered in formulating hypothetical questions include medical impairments, age, education, work experience and RFC); *Boone*, 353 F.3d at 205-06 ("At the fifth step of the evaluation process, 'the ALJ often seeks advisory testimony from a vocational expert.'"). Objections to the adequacy of an ALJ's hypothetical questions to a vocational expert "often boil down to attacks on the RFC assessment itself."

---

[5] Conversely, because the hypothetical question posed to a vocational expert "must reflect all of a claimant's impairments," *Chrupcala*, 829 F.2d at 1276, where there exists on the record "medically undisputed evidence of specific impairments not included in a hypothetical question to a vocational expert, the expert's response is not considered substantial evidence." *Podedworny*, 745 F.2d at 218.

*Rutherford*, 399 F.3d at 554 n.8.

Additionally, the ALJ will often consult the Dictionary of Occupational Titles ("DOT"), a publication of the United States Department of Labor that contains descriptions of the requirements for thousands of jobs that exist in the national economy, in order to determine whether any jobs exist that a claimant can perform." *Burns v. Barnhart*, 312 F.3d 113, 119 (3d Cir. 2002); *see also id*. at 126 (The "Social Security Administration has taken administrative notice of the reliability of the job information contained in the [DOT].") (citing 20 C.F.R. § 416.966(d) (2002)).  While an unexplained conflict between a VE's testimony and the relevant DOT job descriptions does not necessarily require reversal or remand of an ALJ's determination, the Court of Appeals for the Third Circuit requires the ALJ to address and resolve any material inconsistencies or conflicts between the DOT descriptions and the VE's testimony, and failure to do so will necessitate a remand.  *Boone*, 353 F.3d at 206.

<u>Multiple Impairments</u>

Where a claimant has multiple impairments which, individually, may not reach the level of severity necessary to qualify as a Listed Impairment, the ALJ/ Commissioner nevertheless must consider all of the claimant's impairments in combination to determine whether, collectively, they meet or equal the severity of a Listed Impairment. *Burnett*, 220 F.3d at 122 ("the ALJ must consider the combined effect of multiple impairments, regardless of their severity"); *Bailey v. Sullivan*, 885 F.2d 52 (3d Cir. 1989) ("in determining an individual's eligibility for benefits, the 'Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity,'"), *citing* 42 U.S.C. § 423(d)(2)(C), and 20 C.F.R. § § 404.1523, 416.923).

11

Section 404.1523 of the regulations, 20 C.F.R. § 404.1523, Multiple impairments,

provides:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.  If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.  If we do not find that you have a medically severe combination of impairments, we will determine that you are not disabled (see § 404.1520).

Even if a claimant's impairment does not meet the criteria specified in the listings, he

must be found disabled if his condition is equivalent to a listed impairment. 20 C.F.R. §

404.1520(d). When a claimant presents more than one impairment, "the combined effect of the

impairment must be considered before the Secretary denies the payment of disability benefits."

*Bittel v. Richardson*, 441 F.2d 1193, 1195 (3d Cir.1971) . . . ."). To that end, the ALJ may not

just make conclusory statements that the impairments do not equal a listed impairment in

combination or alone, but rather, is required to set forth the reasons for his or her decision, and

specifically explain why he or she found a claimant's impairments did not, alone or in

combination, equal in severity one of the listed impairments. *Fargnoli* , 247 F.3d at 40 n. 4,

*citing Burnett*, 220 F.3d at 119-20.

If the ALJ or Commissioner believes the medical evidence is inconclusive or unclear as

to whether claimant is unable to return to past employment or perform substantial gainful

activities, it is incumbent upon the ALJ to "secure whatever evidence [he/she] believed was

needed to make a sound determination." *Ferguson*, 765 F.2d 36.

<u>Claimant's Subjective Complaints of Impairments and Pain</u>

An ALJ must do more than simply state factual conclusions, but instead must make specific findings of fact to support his or her ultimate findings. *Stewart*, 714 F.2d at 290. The ALJ must consider all medical evidence in the record and provide adequate explanations for disregarding or rejecting evidence, especially when testimony of the claimant's treating physician is rejected. *See Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 961 (3d Cir.1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981). He or she must also give serious consideration to the claimant's subjective complaints, even when those assertions are not confirmed fully by objective medical evidence. *See Mason v. Shalala*, 994 F.2d 1058, 1067-68 (3d Cir.1993); *Welch v. Heckler*, 808 F.2d 264, 270 (3d Cir.1986).

Pain alone, if sufficiently severe, may be a disabling impairment that prevents a claimant from performing any substantial gainful work. *E.g.*, *Carter v. Railroad Retirement Board*, 834 F.2d 62, 65, relying on *Green v. Schweiker*, 749 F.2d 1066, 1068 (3d Cir. 1984); *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Dobrowolsky v. Califano*, 606 F.2d 403, 409 (3d Cir. 1979). Similarly, an ALJ must give great weight to a claimant's subjective description of inability to perform even light or sedentary work when this testimony is supported by competent evidence. *Schaudeck v. Commissioner of Social Security*, 181 F.3d 429, 433 (3d Cir. 1999), relying on *Dobrowolsky*. Where a medical impairment that could reasonably cause the alleged symptoms exists, the ALJ must evaluate the intensity and persistence of the pain or symptom, and the extent to which it affects the individual's ability to work. This obviously requires the ALJ to determine the extent to which a claimant is accurately stating the degree of pain or the extent to which he or she is disabled by it. *See* 20 C.F.R. § 404.1529(c). *Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999).

13

But, if an ALJ concludes the claimant's testimony is not credible, the specific basis for such a conclusion must be indicated in his or her decision.  *See Cotter*, 642 F.2d at 705. Our Court of Appeals has stated:  "in all cases in which pain or other symptoms are alleged, the determination or decision rationale must contain a thorough discussion and analysis of the objective medical and the other evidence, including the individual's complaints of pain or other symptoms and the adjudicator's personal observations.   The rationale must include a resolution of any inconsistencies in the evidence as a whole and set forth a logical explanation of the individual's ability to work." *Schaudeck*, 181 F.3d at 433.

Subjective complaints of pain need not be "fully confirmed" by objective medical evidence in order to be afforded significant weight.  *Smith*, 637 F.2d at 972; *Bittel*, 441 F.2d at 1195.  That is, while "there must be objective medical evidence of some condition that could reasonably produce pain, there need not be objective evidence of the pain itself." *Green*, 749 F.2d at  1070-71 (emphasis added), *quoted in Mason*, 994 F.2d at 1067.  Where a claimant's testimony as to pain is reasonably supported by medical evidence, neither the Commissioner nor the ALJ may discount claimant's pain without contrary medical evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985); *Chrupcala v. Heckler*, 829 F.2d 1269, 1275-76 (3d Cir. 1987); *Akers v. Callahan*, 997 F.Supp. 648, 658 (W.D. Pa. 1998).  "Once a claimant has submitted sufficient evidence to support his or her claim of disability, the Appeals Council may not base its decision upon mere disbelief of the claimant's evidence.  Instead, the Secretary must present evidence to refute the claim.  *See Smith v. Califano*, 637 F.2d 968, 972 (3d Cir.1981) (where claimant's testimony is reasonably supported by medical evidence, the finder of fact may not discount the testimony without contrary medical evidence)." *Williams v. Sullivan*, 970 F.3d 1178, 1184-85 (3d

14

Cir. 1992) (emphasis added), cert. denied 507 U.S. 924 (1993).

In making his or her determination, the ALJ must consider and weigh all of the evidence, both medical and non-medical, that support a claimant's subjective testimony about symptoms and the ability to work and perform activities, and must specifically explain his or her reasons for rejecting such supporting evidence. *Burnett v. Commissioner of Social Security*, 220 F.3d 112, 119-20 (3d Cir. 2000). Moreover, an ALJ may not substitute his or her evaluation of medical records and documents for that of a treating physician; "an ALJ is not free to set his own expertise against that of a physician who presents competent evidence" by independently "reviewing and interpreting the laboratory reports . . . ." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985).

<u>Medical Opinions of Treating Sources</u>

"A cardinal principle guiding disability eligibility determinations is that the ALJ accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.' *Plummer*, 186 F.3d at 429 (*quoting Rocco v. Heckler*, 826 F.2d 1348, 1350 (3d  Cir.1987)) . . . ." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (additional citations omitted). The ALJ must weigh conflicting medical evidence and can chose whom to credit, but "cannot reject evidence for no reason or for the wrong reason." *Id.* at 317, *quoting Plummer*, 186 F.3d at 429 (additional citations omitted). The ALJ must consider all medical findings that support a treating physician's assessment that a claimant is disabled, and can only reject a treating physician's opinion on the basis of contradictory, medical evidence, not on the ALJ's own credibility judgments, speculation or lay opinion. *Morales*, 225 F.3d at 317-318 (citations omitted).

Moreover, the Commissioner/ ALJ   "must 'explicitly' weigh all relevant, probative and available evidence. . . . [and] must provide some explanation for a rejection of probative evidence which would suggest a contrary disposition. . . . The [Commissioner] may properly accept some parts of the medical evidence and reject other parts, but she must consider all the evidence and give some reason for discounting the evidence she rejects." *Adorno*, 40 F.3d at 48 (emphasis added; citations omitted). *See also Fargnoli*, 247 F.3d at 42-43 (although ALJ may weigh conflicting medical and other evidence, he must give some indication of the evidence he rejects and explain the reasons for discounting the evidence; where ALJ failed to mention significant contradictory evidence or findings, Court was left to wonder whether he considered and rejected them, or failed to consider them at all, giving Court "little choice but to remand for a comprehensive analysis of the evidence consistent with the requirements of the applicable regulations and the law of this circuit. . . ."); *Burnett*, 220 F.3d at 121 ("In making a residual functional capacity determination, the ALJ must consider all evidence before him. . . .  Although the ALJ may weigh the credibility of the evidence, he must give some indication of the evidence which he rejects and his reason(s) for discounting such evidence. . . . 'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.' *Cotter*, 642 F.2d at 705.") (additional citations omitted).

<u>Medical Source Opinion of "Disability"</u>

However, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the claimant is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990) ("this type of [medical] conclusion cannot be controlling. 20 C.F.R. § 404.1527

(1989) indicates that [a] statement by your physician that you are disabled or unable to work does not mean that we will determine that you are disabled. We have to review the medical findings and other evidence that support a physician's statement that you are disabled.") (internal citations omitted).

The rules and regulations of the Commissioner and the SSA make a distinction between (I) medical opinions about the nature and severity of a claimant's impairments, including symptoms, diagnosis and prognosis, what the claimant can still do despite impairments, and physical or mental restrictions, on the one hand, and (ii) medical opinions on matters reserved for the Commissioner, such as "disabled" or "unable to work," on the other. The latter type of medical opinions are on matters which require dispositive administrative findings that would direct a determination or decision of disability. *Compare* 20 C.F.R. §404.1527(a-d) (2002) (consideration and weighing of medical opinions) *with* 20 C.F.R. §404.1527(e) (2002) (distinguishing medical opinions on matters reserved for the Commissioner).

The regulations state that the SSA will "always consider medical opinions in your case record," and states the circumstances in which an opinion of a treating source is entitled to "controlling weight." 20 C.F.R. §404.1527(b), (d) (2002)[6].  Medical opinions on matters

---

[6] Subsection (d) states: "How we weigh medical opinions. Regardless of its source, we will evaluate every medical opinion we receive. Unless we give a treating source's opinion controlling weight under paragraph (d)(2) of this section, we consider [a list of] factors in deciding the weight we give to any medical opinion." 20 C.F.R. 404.1527(d) (2002). Subsection (d)(2) describes the treatment relationship," and states:

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual  examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight. When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs (d)(2)(I) and (d)(2)(ii) of this section, as well as the

reserved for the Commissioner are not entitled to "any special significance," although they always must be considered. 20 C.F.R. §404.1527(e)(1-2) (2002). The Commissioner's Social Security Ruling ("SSR") 96-2p, "Policy Interpretation Ruling, Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions," and SSR 96-5p, "Policy Interpretation Ruling, Titles II and XVI: Medical Source Opinions on Issues Reserved to the Commissioner," explain in some detail the distinction between medical opinions entitled to controlling weight and those reserved to the Commissioner.

SSR 96-2p explains that a "finding that a treating source's medical opinion is not entitled to controlling weight does not mean that the opinion is rejected. It may still be entitled to deference and be adopted by the adjudicator." SSR 96-29, Purpose No. 7. Where a medical opinion is not entitled to controlling weight or special significance because it is on an issue reserved for the Commissioner[7], these Social Security Rulings require that, because an adjudicator is required to evaluate all evidence in the record that may bear on the determination or decision of disability, "adjudicators must always carefully consider medical source opinions about any issue, including opinions about those issues that are reserved to the Commissioner," and that such opinions "must never be ignored. . . ." SSR 96-5p, Policy Interpretation, (emphasis added). Moreover, because the treating source's opinion and other evidence is "important, if the evidence does not support a treating source's opinion on any issue reserved to the Commissioner

---

factors in  paragraphs (d)(3) through (d)(6) of this section in determining the weight to give the opinion. We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion. 20 C.F.R. § 404.1527(d)(2) (2002) (emphasis added).

[7] SSR 96-5p lists several examples of such issues, including whether an individual's impairment(s) meets or equals in severity a Listed Impairment, what an individual's RFC is and whether that RFC prevents him or her from returning to past relevant work, and whether an individual is "disabled" under the Act.

and the adjudicator cannot ascertain the basis of the opinion from the case record, the adjudicator must make 'every reasonable effort' to re-contact the source for clarification of the reasons for the opinion." *Id*.

A medical opinion also is not entitled to controlling weight where it is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record . . ." 20 C.F.R. § 404.1527 (d)(2). See note 4, supra. Where an opinion by a medical source is not entitled to controlling weight, the following factors are to be considered: the examining relationship, the treatment relationship (its length, frequency of examination, and its nature and extent), supportability by clinical and laboratory signs, consistency, specialization and other miscellaneous factors. 20 C.F.R. § 404.1527 (d)(1-6).

<u>State Agency Medical and Psychological Consultants</u>

Medical and psychological consultants of a state agency who evaluate a claimant based upon a review of the medical record "are highly qualified physicians and psychologists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings of State agency medical and psychological consultants or other program physicians or psychologists as opinion evidence, except for the ultimate determination about whether [a claimant is] disabled." 20 C.F.R. § 404.1527 (f)(2)(I). *See also* SSR 96-6p: Titles II and XVI: Consideration of Administrative Findings of Fact by State Agency Medical and Psychological Consultants ("1. Findings of fact made by State agency medical and psychological consultants and other program physicians and psychologists regarding the nature and severity of an individual's impairment(s) must be treated as expert opinion evidence of nonexamining

19

sources at the administrative law judge and Appeals Council levels of administrative review. 2. Administrative law judges and the Appeals Council may not ignore these opinions and must explain the weight given to these opinions in their decisions.").

### V.       Discussion

Plaintiff argues that the ALJ erred by concluding that his substance abuse was a contributing factor material to his disability determination, denying SSI, and that substantial evidence does not support the ALJ's decision. Rather, Plaintiff contends that medical evidence provided by Charles Rumble, M.D. ("Dr. Rumble") and Susan M. Moore, LSW, ("Ms. Moore") respectively his treating psychiatrist and therapist, demonstrate that he remains disabled in the absence of substance abuse.[8] The Commissioner contends that substantial evidence supports the ALJ's conclusion that plaintiff's substance abuse was a contributing factor material to his disability determination.

After careful review of the entire administrative record, including the hearing transcript, medical documentation, and other evidence, the Court finds that substantial objective and medical evidence supports the ALJ's conclusion.

### 1.       ALJ's Disability Finding

Initially, the ALJ found plaintiff disabled. Specifically, the ALJ concluded that plaintiff

---

[8] Dr. Rumble and Ms, Moore consistently recorded plaintiff as maintaining a GAF score of 50 while sober for over a year. The Global Assessment of Functioning (GAF) scale, which was devised by the American Psychiatric Association, consider a person's psychological, social, and occupational function on a hypothetical continuum of mental health. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32. The GAF scale is divided into 10 ranges of functioning, in which the selected scale represents the individuals's overall level of functioning. *See Id.* Two components comprise each 10-point range: "the first part covers symptom severity, and the second part covers functioning." *Id.* A GAF of 41-50 indicates an individual has serious symptoms or any serious impairments in social, occupational, or school functioning. *Id* at 34. A GAF of 50 borders on the next 10-point range which represents moderate symptom levels. *Id.*

did not engage in substantially gainful activities and he has the following severe impairments:

opiate dependence, alcohol dependence, depression and anxiety disorder. R. 18. This conclusion

is not disputed by the parties and is sufficiently supported by medical documents and notes in the

record.

Next, in step three of the ALJ's analysis, he concluded plaintiff's impairments did not

meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P,

Appendix 1 (20 C.F.R. § 416.920(d)). In making this determination, the ALJ set aside the

limitations relating to drug and alcohol abuse.

Listing 12.00 Mental Impairments, provides that the "evaluation of disability on the basis

of mental disorders requires documentation of a medically determinable impairment(s),

consideration of the degree of limitation such impairments(s) may impose on the individual's

ability to work, and consideration of whether these limitations have lasted or are expected to last

for a continuous period of at least 12 months." Affective disorders, 12.04, and Anxiety-related

disorders, 12.06, each consists of a "statement describing the disorders(s) addressed by the

listing, paragraph A criteria (a set of medical findings), paragraph B criteria (a set of impairment-

related functional limitations), and paragraph C criteria (a set of functional criteria). The parties

do not dispute the criteria "A" finding  and the record  supports the medical diagnoses of

depression and an anxiety disorder.

Listing 12.04 and 12.06, each set forth the same "B" criteria, namely that the diagnosed

disorder results in at least two of the four following:

> 1. Marked restriction of activities of daily living; or
> 2. Marked difficulties in maintaining social functioning; or
> 3. Marked difficulties in maintaining concentration, persistence, or
> pace; or

> 4. Repeated episodes of decompensation, each of extended
> duration;

Listing 12.04 sets forth the following "C" criteria:

> C. Medically documented history of a chronic affective disorder of at least
> 2 years' duration that has caused more than a minimal limitation of ability
> to do basic work activities, with symptoms or signs currently attenuated by
> medication or psychosocial support, and one of the following:
> 1. Repeated episodes of decompensation, each of extended duration; or
> 2. A residual disease process that has resulted in such marginal adjustment
> that even a minimal increase in mental demands or change in the
> environment would be predicted to cause the individual to decompensate;
> or
> 3. Current history of 1 or more years' inability to function outside a highly
> supportive living arrangement, with an indication of continued need for
> such an arrangement.

Listings 12.04, 20 C.F.R. Regulations No. 4, Subpt. P, App. 1 (2002).

The "C" criteria for listing 12.06 is the "complete inability to function independently

outside the area of one's home." *Id*.

The ALJ evaluated plaintiff according to both the 12.04 and 12.06 Listings.  Since there

were medical diagnoses of depression and anxiety, the ALJ reasoned that plaintiff's symptoms

sufficiently established the basic existence of the disorders pursuant to subparagraph "A" criteria

of Listings 12.04 and 12.06.

Therefore, he proceeded to evaluate plaintiff in terms of criteria "B". First, the ALJ

evaluated plaintiffs limitations with respect to activities of daily living.[9] In his "Daily Activities

Questionnaire," completed in January 2006, plaintiff reported he lived in an apartment with his

brother, performed household tasks, maintained adequate grooming and hygiene, and admitted to

---

[9] Activities of daily living include adaptive activities such as cleaning, shipping, cooking, taking public
transportation, paying bills, maintaining a residence, caring appropriately for one's grooming and hygiene, using
telephones and directories, using a post office, etc. Section 12.00 C1, Part A, Appendix 1.

being capable of using public transportation. Further, Ray M. Milke, P.h.D., ("Dr. Milke")[10] concluded that plaintiff had only moderate limitations of activities of daily living.[11] Accordingly, the ALJ deemed plaintiff to only have moderate limitations in daily living activities. Second, with respect to plaintiff's social functioning,[12] the ALJ again adopted Dr. Milke's opinion, and found that plaintiff had no more than moderate limitations in social functioning. Additionally, the ALJ reasoned there was no evidence of any altercations, plaintiff maintained visitations with his children, and he had no further involvement with the legal system, outside of his delinquent child support obligation. Next, regarding plaintiff's concentration, persistence and pace,[13] the ALJ gave due weight to Stephen Perconte's, Ph.D. ("Dr. Perconte")[14] expressed belief that plaintiff has mild to moderate overall impairment of the ability to sustain attention to the performance of simple, repetitive tasks, but that the limitation was largely due to characterological disorder and long-term substance abuse. Consequently, the ALJ reasoned that "absent substance abuse, the limitations on plaintiff's ability to maintain attention and concentration is no more than

---

[10] Dr. Milke is a state agency psychological consultant, experienced in evaluating mental impairments in the context of Social Security regulations.

[11] Dr. Milke derived his conclusion from the evidence in plaintiff's medical file. He assessed plaintiff's residual functional capacity, psychiatric state, and reviewed Dr. Perconte's March 9, 2004, psychological evaluation. R. 248. Dr. Milke concluded that plaintiff is capable of understanding and remembering instructions, concentrating, interacting appropriately with people, adapting to changing activities within the workplace, working within a work schedule at a consistent pace, and making simple decisions. *Id.*

[12] Social function refers to an individuals capacity to interact appropriately and communicate effectively with other individuals. Section 12.00 C2, Part A, Appendix 1.

[13] Concentration, persistence and pace refers to the ability to sustain focused attention sufficiently long to permit timely completion of tasks commonly found in work settings. Section 12.00 C3, Part A, Appendix 1.

[14] Dr. Perconte is a licensed psychologists, who conducted a clinical psychology evaluation to provide the Bureau of Disability Determination with an independent assessment of the plaintiff, a diagnosis of any revealed conditions, and objective data to help determine the effects such conditions will have on plaintiff's ability to perform work-related activities. R. 221-229

moderate." R. 20. Lastly, the ALJ evaluated plaintiff's deterioration or decompenstion in work or work-like settings.[15] The ALJ found there had been no episodes of decompensation that "were not associated with the abuse of drugs or alcohol." R. 21. As a result of these determinations, the ALJ concluded that plaintiff did not satisfy criteria "B" because he lacked marked limitations in at least two of the factors considered by part "B."

Subsequently, the ALJ considered whether plaintiff satisfied the part "C" criteria in lieu of part "B".[16] Although plaintiff provided evidence of depression and anxiety symptoms, lasting more than two years, the ALJ found that the evidence did not satisfy the "C" criteria. Plaintiff does not offer any evidence to refute this finding. The ALJ also reasoned that the evidence supported the conclusion that plaintiff functioned reasonably well outside his home environment.

Since plaintiff did not have an impairment that met or medically equaled one of the listed impairments pursuant to 20 C.F.R. § 416.920(d), the ALJ determined plaintiff's residual functional capacity and proceeded to steps four and five of the requisite analysis.

Based on all the impairments, including substance abuse, the ALJ held that plaintiff had the "residual functional capacity to perform tasks at any exertional level consisting of simple, repetitive tasks that do no require dealing with general public, maintaining close interaction and

---

[15] This refers to repeated failure to adapt to stressful circumstances which causes the individual either to withdraw from that situation ro to experience exacerbations of signs and symptoms with an accompanying difficulty in maintaining activities of daily living, social relationships, and/or maintaining concentration and task persistence. Section 12.00 C4, Part A, Appendix 1.

[16] As previously stated, for listing 12.04, claimant can satisfy part "C" by presenting medically documents evidence of an affective disorder of at least two years during, that has caused more than minimal limitation of ability to do any basic work activity, with symptoms or signs currently attenuated by medication or psychosocial support and one of the following: (1) repeated episodes of decompensation, each of extended duration, (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate, or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with continued need for such an arrangement. The alternative "C" criteria for Listing 12.06 is satisfied by evidence of a complete inability to function independently outside of one's home.

cooperation with coworkers or independent decision-making." R. 21. The ALJ also reasoned that because of plaintiff's repeated absences, his non-exertional impairments would prevent him from obtaining employment. *Id.*

As a result of plaintiff's habitual inability to attend work, the ALJ deduced that he could not perform past relevant as a construction laborer, electrician's helper, and warehouse worker. R. 22. Again, plaintiff's medical and employment history shows that plaintiff's regular attendance was a significant problem when he was abusing drugs. R. 227-232, 258-270.

To determine the extent of the occupational base erosion caused by these limitations, the ALJ asked the VE whether jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity. The VE explained there were no jobs in the national economy that such an individual could perform, because regular absences occurring more than once per month would not be tolerated in the competitive job economy for unskilled work. R. 57.

In taking plaintiff's substance abuse into consideration, the ALJ sufficiently weighed and evaluated plaintiff's impairments, vocational factors, and residual functional capacity in finding him disabled under the SSA. *See Adorno* 40 F.3d at 46 (citing *Richardson*, 402 U.S. at 401). Thus, substantial evidence supported the ALJ's determination. *See Id*; *Ventura*, 55 F.3d at 901.

2. Finding of Contributory Material Factor and Denial of Benefits

Since there was medically documented substance abuse disorder, it was incumbent upon the ALJ to determine whether plaintiff's substance abuse was a contributing factor material to his disability determination. Contract with America Advancement Act, Pub. L. No. 104-121, § 105(a)(1), 110 Stat. 847, 852 (1996) (codified at 42 U.S.C. § 423(d)(2)(C)); *Sklenar v. Barnhart*,

25

195 F. Supp.2d 969, 699-700 (W.D.Pa. 2003) (confirming that the presence of a medically documented substance abuse disorder mandates a determination of whether a claimant would continue to be disabled in the absence of substance abuse). Put another way, the ALJ had to determine whether plaintiff would remain disabled absent a substance abuse disorder. *See Id.*

Plaintiff contends that substantial evidence does not support the ALJ's holding, and that the evidence provided by Dr. Rumble and Mrs. Moore, respectively his treating physician and therapists, should be afforded controlling weight.

In 1996, Congress passed The Contract with America Advancement Act, thereby amending Title II of the Social Security Act and barring the award of disability caused by drug addiction or alcoholism. *See* 42 U.S.C. § 423(d)(2)(C); *Torres v. Chater*, 125 F.3d. 166, 169 (3d Cir. 1997). In relevant part, the amended Social Security Act states that "[a]n individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C)**.**

As a result of the 1996 amendment, an ALJ must employ a two-part analysis. *Lang v. Barhnhart,* 2006 WL 3858579, *5 (W.D.Pa. 2006); *Parra v. Astrue*, 481 F.3d 742, 747 (9th Cir. 2007). First, an ALJ must apply the traditional five-step analysis to determine whether the claimant would otherwise be entitled to disability benefits. *Lang*, at *5-7; *Warren v. Barnhart*, 2005 WL 1491012 *9 (E.D.Pa. 2005) (explaining that after finding an individual who abuses substances disabled, 20 C.F.R § 404.1535 requires the ALJ to determine whether the substance abuse was a contributing factor material to the individual's disability determination); *see also Bruggeman v. Barnhart*, 348 F.3d 689, 693-94 (8th Cir 2003) (stating that "the plain text of the

26

relevant regulation requires the ALJ first to determine whether [the claimant] is disabled");

*Williams v. Barnhart*, 338 F. Supp.2d 849, 862 (D.Tenn 2004) (concluding that the regulations of

42 U.S.C. § 423(d)(2)(C) "clearly require that the sequential evaluation process be followed in

adjudicating disability before any consideration is given to whether [substance abuse] is the

cause of such disability.").

Next, "[i]f the claimant is found disabled and there is medical evidence of a substance

abuse disorder, the ALJ must employ the five-step analysis again, to determine whether in the

absence of the substance abuse, the claimant's remaining limitations would render him disabled.

*Warren* at *9. To make that determination, the SSA promulgated the following guidelines:

> (a) General. If we find that you are disabled and have medical evidence of your drug
> addiction or alcoholism, we must determine whether your drug addiction or alcoholism is
> a contributing factor material to the determination of disability, unless we find that you
> are eligible for benefits because of your age or blindness.

> (b) Process we will follow when we have medical evidence of your drug addiction or
> alcoholism:

>> (1) The key factor we will examine in determining whether drug addiction or
>> alcoholism is a contributing factor material to the determination of disability is
>> whether we would still find you disabled if you stopped using drugs or alcohol.
>> (2) In making this determination, we will evaluate which of your current physical
>> and mental limitations, upon which we based our current disability determination,
>> would remain if you stopped using drugs or alcohol and then determine whether
>> any or all of your remaining limitations would be disabling.
>> (I) If we determine that your remaining limitations would not be disabling, we will
>> find that your drug addiction or alcoholism is a contributing factor material to the
>> determination of disability.
>> (ii) If we determine that your remaining limitations are disabling, you are disabled
>> independent of your drug addiction or alcoholism and we will find that your drug
>> addiction or alcoholism is not a contributing factor material to the determination
>> of disability.

20 C.F.R §§ 416.935(a)-(b); 20 C.F.R. §§ 404.1535(a)-(b).[17]

Courts within the Third Circuit, as well as other federal courts, utilize the standards of 20 C.F.R §§ 416.935(a)-(b) and 404.1535(a)-(b). *See, e.g., Sklenar,* 195 F.Supp.2d at 699 (citing and applying 20 C.F.R. § 416.935 standards); *Williams v. Apfel*, 1999 WL 357357, *2 (E.D.Pa. 1999) (same); *Davis v. Apfel*, 1999 WL 972007 (E.D.Pa. 1999) (citing and applying 20 C.F.R. § 404.1535); *Prado v. Apfel*, 1999 WL 163623 (E.D.Pa. 1999) (same); *see also, e.g.*, *Mittlestedt v. Apfel*, 204 F.3d 847, 851 (8th Cir. 2000) (same); *Molloy v. Apfel*, 77 F. Supp.2d 1009 (S.D. Iowa 1999) (same).

Hence, when a claimant has a potentially disabling illness and is a substance abuser, the issue is whether the claimant would still be disabled if he no longer abused drugs and/or alcohol. *Sklenar*, 195 F.Supp.2d at 700 (stating that the "key inquiry in determining whether alcoholism was a contributing factor material to the determination of disability is whether claimant would be still be . . . disabled if she stopped using . . . alcohol."); *Lang*, at *6-7 (stating that "if the record included evidence of alcohol abuse, the ALJ must apply § 404.1534 . . . to ascertain if the claimant would still be disabled if he no longer used alcohol."); *Davis*, 1999 WL 972001 at *4 (ordering on remand that the Commissioner determine if the claimant would be disabled absent substance abuse, and if the answer is in the negative, social security benefits should be denied); *see also Kangil v. Barnhart*, 454 F.3d 627, 628-29 (7th Cir. 2006) (stating that "when an applicant for disability benefits both has a disability illness and is a substance abuser, the issue for the [ALJ] is whether, were the applicant not a substance abuser, she would still be disabled.").

---

[17] The standards enunciated by 20 C.F.R §§ 416.935(a)-(b); 20 C.F.R. §§ 404.1535(a)-(b) are identical.

The burden of showing that alcoholism is not a contributing factor material to the disability determination lies with the claimant. *Sklenar*, 195 F.Supp.2d at 706 (concluding that the ultimate burden of proving continued disability rests with claimant); *see also Burggemann*, 348 F.3d at 693 (stating, the "burden of proving that alcoholism was not a contributing factor material to the disability determination falls on [the claimant]"); *Parra*, 481 F.3d at 747-48 ("concluding that proving disability is claimant's burden, and any amendment to the definition of disability logically impacts his burden," therefore, claimant bears burden of proving that substance abuse is not contributing material factor to his disability) (internal quotation marks omitted); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) (holding that pursuant to 42 U.S.C. § 423(d)(2)(C), claimant bears the burden of proving his substance abuse disorder is not a contributing factor material to his disability determination); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir. 1999) (reasoning that the overall burden of demonstrating a disability rests with the claimant, therefore, it logically follows that the burden continues to lie with claimant when the issue is whether the claimant's substance abuse is a contributing factor material to his disability determination). This is consistent with the rule that at all times it is the claimant's burden to establish his or her entitlement to disability insurance benefits. *See, e.g.*, *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005); *Parra*, 481 F.3d at 748.

Though no legal authority definitely specifies the type of evidence required to meet a claimant's burden, there is however, a general consensus that an "ALJ must identify at least some medical evidence supporting the conclusion that [the] claimant no longer would be disabled if he or she stopped drinking or taking drugs." *Sklenar*, 195 F.Supp.2d at 700 (internal quotation marks omitted); *Davis v. Apfel,* 1999 WL 9720007, *4 (E.D.Pa. 1999); *see also  Nevis v. Apfel*,

2000 WL 342665, *10 (N.D.Cal. 2000). 195 F.Supp.2d at 704; *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995).

The ALJ acknowledge that if he accepted Dr. Rumble and Ms. Moore's April 27, 2005, assessment at face value, he would deem plaintiff disabled per se because his impairments would satisfy Listing 12.04, in the absence of substance abuse. In the assessment, Dr. Rumble and Ms. Moore explicitly stated that plaintiff's disability directly  resulted from his depression and anxiety. However, the ALJ afforded these medical findings minimal weight. The ALJ questioned the assessment's accuracy and support by the underlying treatment records, and stated that the treatment records were "sketchy." R. 23, 250-257. The ALJ correctly recognized discrepancies between the number of visits with Ms. Moore and Dr. Rumble as testified by plaintiff and reflected by the treatment notes. Further, he explained how Dr. Rumble's and Ms. Moore's treatments notes were devoid of any objective findings such as limitations upon social functioning or the maintenance of attention, concentration, and pace; and principally reflected plaintiff's concern about his pending disability benefits appeal.[18] R. 24-25, 221-32, 258-69.

The ALJ also used Dr. Rumble's psychiatric evaluation on July 2004, to support his findings. Dr. Rumble noted that plaintiff's memory was only somewhat impaired, he could spell the word "world" backward, perform mental calculations, give abstract similarities, and interpret proverbs; that plaintiff's mood was only somewhat irritable and subdued; and his IQ was considered average. R. 272. The ALJ also pointed to his analysis in step three, in which he set aside plaintiff's substance abuse related limitations and explained how he did not satisfy criteria "B" and "C".  Therefore, in accordance with the SSA's regulations and pertinent case law, the

---

[18] The ALJ's reasoning is consistent with his conclusion, in step three of the analysis, that plaintiff did not satisfy the "B" criteria of Listing 12.04 and 12.06.

ALJ adequately weighed all relevant, probabtive evidence and explained his reasoning. *See*

*Morales*, 225 F.3d at 317-318 (citations omitted).

Subsequently, the ALJ determined plaintiff's residual functional capacity in the absence

of substance abuse. He concluded that, "if claimant maintains abstinence from substance use, the

claimant has the residual functional capacity to perform tasks at any exertional level limited to

simple, repetitive tasks that do not require dealing with general public, maintaining close

interaction and cooperation with coworkers or performing independent decision making or

similar sources of a high level of work stress." R. 23. Plaintiff argues that the ALJ made an

erroneous residual functional determination in that the following evidence should have been

afforded greater weight:

 1) On June 25, 2004, at plaintiff's initial evaluation, Dr. Rumble diagnosed him

with General Anxiety Disorder and Depressive Disorder, and designated a GAF

score of 50.[19] R.256. Dr. Rumble's medical notes indicate he had follow-ups with

plaintiff in October and December 2004, February, April, June, August, October,

and December 2005, and February 2006, in which he recorded the same GAF

score of 50 at every visit. R. 258-269. He also confirmed plaintiff had been clean

and sober since December 2004. R. 268.

2) Mrs. Moore's medical notes, which demonstrate plaintiff participated in

outpatient therapy twice per month. R. 252. A June 15, 2005, letter to plaintiff's

attorney, in which she noted that plaintiff's anxiety and depression were

significant impairments, R. 251; and a April 27, 2005, assessment, where Dr.

---

[19] *See supra* note 8.

31

Rumble and Ms. Moore explicitly stated that plaintiff's disability directly resulted from his depression and anxiety disorder. R. 254.

Plaintiff corroborated these medical claims with his testimony in which he explained he had not abused drugs or alcohol in the past couple years, and described a continuing high level of depression, anxiety, fear, and worry. R. 51, 53. He also testified he meets with his therapist approximately once to twice a month and sees his psychiatrist once every three to six weeks. R. 45.

Plaintiff further argues that the ALJ should have afforded greater evidentiary weight to his GAF scores of 50 because they reflect Dr. Rumble's and Ms. Moore's June 27, 2005, assessment, supports his subjective complaints, and demonstrate his inability to engage in regular work activity and marked limitations in the areas of daily activities and social functioning.

Though a GAF score should be considered along with all the evidence within the record and may assist in the ALJ's determination of a claimant's residual functional capacity, it is not, however, dispositive. *See* 65 Fed. Reg. 50746-01, 50764-65 (2000); *see e.g.*, *Lopez v. Barnhart*, 78 Fed. Appx. (10th Cir. 2003). Also, a medical statement or opinion expressed by a treating source on a matter reserved for the Commissioner, such as the plaintiff is "disabled" or "unable to work," is not dispositive or controlling. *Adorno*, 40 F.3d at 47-48, *citing Wright v. Sulllivan*, 900 F.2d 675, 683 (3d Cir. 1990).

In accordance with the Social Security regulations, the ALJ evaluated and considered all symptoms and the extent to which these symptoms are reasonably consistent with objective and subjective evidence. He also considered medical opinion evidence as required by 20 CFR 416.927, R 24, and explained why he did not give such opinions controlling weight.

32

The following evidence supported the ALJ's reasoning:

1) After plaintiff completed detoxification at UPMC-Braddock, Dr. Perconte performed a mental status examination on March 9, 2004. At this time, plaintiff was alert and responsive; exhibited a generally broad affect, somewhat grandiose mood, and self-absorbed and perseverative thought processes; did not report any homicidal ideation or disassociative symptoms; did not appear to have a specific suicidal intent; and did not display evidence of ritualistic or obsessive behaviors. R.225. Dr. Perconte concluded that plaintiff exaggerated his symptoms for the purpose of claiming compensation; that plaintiff suffered only slight limitations in the ability to carry out short, simple instructions, and only moderate limitations in other work related abilities; and that absent active substance abuse, plaintiff remains mildly to moderately limited in terms of his ability to maintain adequate social interaction in the workplace and to sustain attention to assigned tasks; and that the residual impairments were attributable to plaintiff's substance abuse and characterological disorder. R. 227-29; 231-32.

2) Dr. Rumble's psychiatric evaluation on July 2004 (after plaintiff had been sober for approximately 100 days) in which he found that plaintiff's memory was only somewhat impaired, he could spell the word "world" backward, perform mental calculations, give abstract similarities, and interpret proverbs; that plaintiff's mood was only somewhat irritable and subdued; and his IQ was considered average. R. 272. Dr. Rumble also noted that plaintiff was neat, cooperative, and fully oriented, and denied any suicidal ideas. R. 271-72.

33

3) Dr. Milke's expressed belief that the limitations resulting from plaintiff's impairments, absent substance abuse, do not preclude him from meeting the basic mental demands of competitive work on a sustained basis. R.25, 243-245.

Further, the ALJ found that plaintiff's testimony regarding his current activities was inconsistent with a continuing disability, in the absence of substance abuse. Plaintiff testified that he signed a lease for a new apartment and would be moving shortly, tries to keep his emotions tempered, manages his bills, prepares simple meals, cleans, goes for walks three to four times a week, generally seeks solitude in quietness and tends to stay alone, spends time with his children, and is capable of taking public transportation. R. 48-51, 155-157. Based on this evidence, the ALJ reasonably concluded that plaintiff is confident in his capability to live independently and carry out daily living activities. R.24.

Plaintiff's subjective complaints also received adequate consideration in his residual functional capacity determination. The ALJ found plaintiff's statements regarding the intensity, duration, and limiting effects of his symptoms to be only partially credible. The ALJ reasoned that plaintiff's subjective complaints were inconsistent with:

1) Treatment notes from Northwest Human Services since July 2004, which indicated few concrete problems other than dealing with claims for past-due child-support and his pending disability hearing.

2) A conclusion by an attending physician at UPMC in February 2004, that plaintiff malingered.

3) Dr. Perconte's conclusion that plaintiff deliberately performed poorly on a Mini-Mental State Exam, exaggerated symptoms, malingered; and his findings

34

regarding plaintiff's ability to perform work related activities, as discussed above.

4) Dr. Rumble's progress notes from October 2004 to February 2006, which

reflected few concrete problems other than plaintiff's concerns about his SSI

claim and child-support.

5) The daily activities plaintiff described, as discussed above.

R. 24, 226-27, 229-32.

In determining plaintiff's residual functional capacity the ALJ explained why he gave

minimal weight to Dr. Rumble and Ms. Moore's opinions. He certainly considered Ms. Moore's

assessment that plaintiff experienced extreme symptoms of anxiety and would be unable to

function in any routine job setting. However, even though Dr. Rumble signed off on Mrs.

Moore's assessment, the ALJ afforded it little weight because Mrs. Moore is not a licensed

clinical psychologist, her opinion made no mention of plaintiff's history of substance abuse, and

none of her underlying treatment notes supported her opinion and they showed a significant

amount of discussion regarding plaintiff's forthcoming disability hearing. R. 24. On these facts,

the ALJ justifiably reasoned that it appeared Ms. Moore accepted plaintiff's subjective assertions

that he could not deal with any work situation at face value, and that the record did not support

those subjective assertions.

Moreover, plaintiff's consistent GAF scores of 50 were inconsistent with the objective

evidence regarding plaintiff's current activities and medical treatment notes, as discussed above.

Therefore, in light of the other evidence within the record, the ALJ adequately explained why he

found that the GAF scores of 50 were not dispositive and were only one factor to be considered.

The ALJ thoroughly reviewed the objective evidence, medical opinions, and plaintiff's

subjective complaints in determining plaintiff's residual functional capacity. In accordance with the above standard, he gave due weight to all relevant, probative evidence within the record. Therefore, substantial evidence supported the ALJ's residual functional capacity determination.

To determine the extent to which plaintiff's limitations eroded the occupational base of unskilled work at all exertional levels, the ALJ asked the VE whether, in the absence of alcohol abuse, jobs existed in the national economy for an individual with plaintiff's age, education, work experience, and residual functional capacity. The VE responded that such an individual would be able to perform the requirements of representative occupations such as bench assembler, hand packer or janitor. R. 55-57. He further explained that these representative occupations accounted for more than 3 million jobs in the national economy. This was consistent with the Dictionary of Occupational Titles. Consequently, substantial evidence supported the ALJ's conclusion that if plaintiff abstained from substance abuse, he would be "capable of making a successful adjustment to find work that exists in significant numbers in the national economy." R. 25;  *See Burns*, 312 F.3d at 123 (internal citations omitted).

In reaching his conclusion, the ALJ sufficiently adhered to SSA regulations and pertinent case law.

## VI.     Conclusion

Substantial evidence supported the ALJ's conclusion that plaintiff's substance abuse disorder was a non exertional impairment which was a contributing material factor to his disability determination. Therefore, this Court will affirm the ALJ's holding.

An appropriate order will follow.


s/ Arthur J. Schwab
Arthur J. Schwab
United States District Judge


cc: all ECF registered counsel